Next case called for enlargement is Deer Run Lake Association v. O'Brien. Counsel, whenever you're ready, please proceed. Good morning. Good morning. Please support. Counsel, my name is Josh Stratmire. I'm an attorney at the law firm Kruger, Henry & Hunter, which represents the appellant in this case, Michael O'Brien. This case involves a dispute over the right to the use of Deer Run Lake. Deer Run Lake is a man-made lake in Williamson County, Illinois. The lake was previously owned by a gentleman named James R. Patrick. He owned the lake and he also owned the real estate surrounding the lake. He developed this real estate into residential lots that surround this man-made lake. On February 1, 1993, the appellant purchased lot number 6 in Deer Run 2nd edition from Mr. Patrick. He purchased this for $15,000. The appellant testified at trial that he informed Mr. Patrick prior to purchasing lot number 6 that he would not purchase the lot unless he received the lake privileges as part of the transaction. So a deed was prepared by Attorney Jim Garrison, which conveyed lot 6 to the appellant. Now the deed contains two separate clauses that are at issue in this case. The first clause states that the property is subject to and with the benefits of all the restrictions, conditions, covenants, and charges contained in that certain instrument recorded in Miscellaneous Record 213 at page 863 in the Office of the Reporter of Williamson County, Illinois, which is hereby incorporated by express reference and made a part of this conveyance. The second clause of that issue in this case states that lake privileges are hereby granted to grantees by virtue of covenants set forth in agreement heretofore to be executed and reported by grantees. At the time of purchase, there were no improvements on lot number 6. It was a vacant lot. The appellant began to construct his home on this lot number 6 after purchasing it from Mr. Patrick. Mr. Patrick actually assisted the appellant in construction of this house. He did a lot of the dirt work, and also he helped build up and slope the bank of the property down towards the lake. Over the next 15 years, the appellant exercised his lake privileges, and he did so in a number of different ways. He fished from the bank. He fished from a boat in the lake. He built a boat dock. He also used it for irrigation purposes. He did this from the time he purchased it in 1993 until 2008. No one during that time period ever objected to his use of the lake in this manner. Now in 2007, Michael Whittington and his wife purchased the lake from James Patrick. Mr. Whittington then transferred the lake to the Deer Run Lake Association, and the association then, I believe, sent out letters to the homeowners surrounding the lake telling them that they'd be required to join the Homeowners Association to pay dues in order to have access and use of this lake. Mr. O'Brien, the appellant, refused to join the lake association and continued to use the lake as he had previously, and the association then brought this suit against Mr. O'Brien for trespass. After a bench trial on the case, the trial court found that the plaintiff proved elements of trespass as alleged in the complaint and awarded nominal damages of $1. The trial court further stated that although no injunctive relief was requested, based on its ruling in the case, the association could seek to enjoin Mr. O'Brien from any further use and enjoyment of the lake. And as a result, this appeal was followed to determine the right of the appellant to use Deer Run Lake. And since this case involves the construction of the provisions of a warranty deed, it is a question of law, and therefore the standard of review is de novo. Now, it's the position of the appellant that he's entitled to use Deer Run Lake for two alternate reasons. The first is due to the language in the deed that conveys the lake privileges to the appellant. In construing a deed, of course, it's the court's objective to ascertain the intent of the parties. And when there's no ambiguity in the terms of the deed, then the court engages the intent of the parties through the language that is used in the deed. Here again, the clause states that lake privileges are hereby granted to grantees by virtue of covenant set forth in agreement heretofore to be executed and reported by grantor. So looking at language, first of all, of that clause, it specifically uses the term or the phrase lake privileges are hereby granted. The term grant shows a present interest to convey a right to the grantee. So it shows that the grantor is conveying lake privileges to the grantee in this case. Well, the issue here really isn't whether or not lake privileges were granted. The question is what lake privileges were granted. I believe that is one issue. I agree with you there. And it would be the appellee's argument that this second clause, this lake privileges clause, actually refers to the restrictive covenants, the prior clause in the deed. I guess the question is whether or not that is correct because there is only one privilege that is in the restrictive covenants, and that's the right to discharge an irrigator into the lake. That's the only privilege that is granted in the restrictive covenants. The clause lake privileges is plural. It says privileges. So, of course, indicating that there is more than one privilege that is being granted to the grantee. It's kind of hard to zero in on that being plural as an important thing when the entire clause is poorly drafted and we have heretofore to be executed. It's past tense and future tense. I certainly agree. I don't think there's any question. Nobody would argue that this is a very clear conveyance that this clause was well drafted. Simply, it's not. And you touched on an important point there. It uses the word for, first of all, like I talked about, it uses the word grant, indicating an intent to convey privileges. And then it goes into using past tense terms, heretofore executed. And then it says it uses future tense, an agreement to be executed and recorded. So it's kind of all over the place. We have in our brief also that these are repugnant clauses that you can't reconcile all these future and past tense clauses. And there is law in Illinois that the first of these repugnant clauses is the one which was controlled, which is that the grantor is conveying privileges to the grantee. It also uses the term agreement, which requires a meeting of the minds between the parties. It's not a restricted covenant where it's done unilaterally. It's an agreement between the parties here that was to be executed. And also when there's doubt in the wording of the conveyance, it's to be construed against the grantor in favor of the grantee. It's also construed against the drafter, who in this case, Attorney Garrison, who drafted the deed, was not employed by the appellant to draft the deed and therefore should be construed against the grantor, as Mr. Garrison was his attorney or the attorney of the title company in this case. Also, under Illinois law, courts should construe this clause as to make it effective. If you accept the argument of the appellee in this case, that this second clause, granting late privileges, just is referring to the previous clause regarding the restricted covenants, it makes the second clause convey nothing. It makes it simply ineffective. You can scratch it out and have the exact same conveyance here. So it's also, under the rules of construction, should read it in a way that it does have some effect. And so it should be construed that the late privileges clause has effect and it did convey these late privileges to the grantees in the case. So based on the rules of construction, we believe it was the intent of the grantor to grant late privileges to the grantee in this case. And therefore, we ask that the court should construe it in favor of the appellant. Now, like we also discussed, this clause is kind of a mess. It's all over the place. And if the court believes that it's ambiguous, then it can kind of look outside the pocket and look at the other evidence that was produced or it testified to at the trial. And in this case, there are a lot of key factors that were testified to and disputed in the trial. The first is that the appellant used these late privileges for a period of 15 years, Mr. Patrick, actually even helping slope the bank down to the water so he could use the late privileges. Mr. Patrick was in the area developing these other tracts of real estate. He could have at any time objected to the appellant's use of the lake or the manner in which he was using it. He never did so. Also, when Mr. Patrick was selling these lots, he had a sign up in front of the subdivision that said, it had a picture of a lake and it said, lots for sale, private lake, restrictive covenants. He was holding these lots out as having access to a private lake. So I think taking all these factors, again, if it's ambiguous looking at the evidence outside of the document itself, indicates that Mr. Patrick did indeed intend to convey these additional late privileges to the appellant, Mr. O'Brien. Now, even if the court determines that this clause is simply ineffective, it has no effect at all, we believe that the appellant would still have the right to use Deer Run Lake under a previous decision of this court, it's Rochetta v. Hoyer. In that case, the court decided that the defendant had the right to use the lake even though there was no express grant of such privileges in his deed. Now, in that case, the person asserting his rights, land was adjacent to the lake, is that right? That is correct. And there's no question here that the owner reserved a 15-foot strip around the lake at all times. That is correct. How does that weigh on your argument that the intention was that there would be lake privileges and that he was holding them out as having lake access when the owner kept a strip of land between the lake and the lots? The fact that he kept that strip of land, when he conveyed the lake privileges, he was also conveying the right to use that 15-foot or 10- or 15-foot strip also as well. Why bother to keep that 15-foot strip? I'm not sure of his intention. I believe there was some indication that he wanted more control of the lake area, which would be, I guess, the case if some of the other lot purchasers of the other lots weren't granted lake privileges. He would still have that 10- to 15-foot strip there before he got to the lake. In this case, when he grants the lake privileges, I think it almost grants an easement as well across that 10- to 15-foot part that he has reserved for himself. I think that is the distinction. If he hadn't granted lake privileges, then sure, he'd still have that 10- to 15-foot strip there. I think that's kind of how that plays together. But in Rochetta v. Hoyer, this court found that the defendant, even absent of any express conveyance in the deed, that the defendant had the right to use this lake. This court specifically held in that case that at the time of the sale, the use of the lake for recreational purposes was established, was visible to anyone dealing with the property, and conferred a considerable benefit upon the track purchased by the defendant. This court further stated that, in our view, the right to the recreational use of the lake is essential to the beneficial enjoyment of the tracks that border it. The purchase of the property is as much for the right to use the lake as it is for the land itself. Importantly, we find that the claims of property were subject to an easement for the benefit of the Hoyer track, and that beneficial right to use of the lake for recreational purposes passed with the conveyance of that track to the defendant. Again, that's the case of Rochetta v. Hoyer, previously decided by this court. And you have a very similar situation here. In both cases involved an original grantor who owned not only the lake, but the land surrounding the lake. In both cases, the original grantor began selling the land around the lake. In both cases, the original grantor did not convey the actual lake at the time. In both cases, it's evident that the lakes were created for the benefit of the land that did surround them. In both cases, the right to the recreational use of the lakes was essential to the beneficial enjoyment of the tracks that border them. And finally, the purchase of the properties are as much for the right to use the lakes as they are for the lands themselves. So the similarities between the Rochetta case and this case are so similar that we ask that the court should apply the law in Rochetta and find the existence of an appurtenant easement. That is if the court finds that that clause in the warranty deed itself is ineffective. Therefore, we ask the court to reverse the ruling of the trial court in order that the appellant does have lake privileges and the right to use this lake pursuant to his warranty deed or in the alternative that he has a perfect easement to use the lake. Thank you. Thank you, counsel. Counsel? May it please the court, opposing counsel. My name is Steve Green, and I am pleased to represent the Deer Run Lake Association in this matter. This case turns upon whether or not Mr. O'Brien, the appellant, had a particular privilege in order to defeat the claim of trespass that was brought against him. Could we back up just a little? Does the association own the lake? Yes. The lake in a 15-foot strip all the way down. They bought that from the original catcher. Mr. Patrick was the gentleman that subdivided this property. He divided the property so that the lake in a 15-foot strip was basically one parcel, and then there were numerous parcels adjacent to that strip and beyond. He was the subdivision developer. It is important to note that this case was a trespass case, and there was an affirmative defense brought by Mr. O'Brien in order to defeat that. He had the burden of proving that he had a specific right or privilege, as he put it, in order to defeat the claim of trespass. Here, the trial court found that the facts established a trespass. Here, the trial court also found that Mr. O'Brien failed to demonstrate the privileges that he sought to use the lake for or, in fact, granted to him. Now, there is no question that there is the language that Your Honor has already pointed out on this deed. There is no question that it was poorly written. That's all true. However, there are several different things I would ask this court to take mind of in the arguments of Mr. O'Brien in order to find that there is other privileges out there other than what he exercised. First, if you look at the language that he relies upon heavily in order to say, well, gee, there has to be more than just this right to discharge my septic tank into the lake, he looks to that phrase, lake privileges hereby granted to grantees, but they ignore the next prepositional phrase, by virtue of covenants set forth in agreement heretofore to be executed and reported by the grand court. Now, the only document that the trial court had were, in fact, the restrictive covenants that were reported. That is the only document the court had to rely upon. Mr. O'Brien did testify that over, I think it was 16 years, he had used the lake in a variety of manners. He had fished in it. He had swam in it. He had also taken a boat, I believe, out on the lake in Houston in that manner. Recently, during the time of the litigation, Mr. O'Brien started pumping water out of there at an excessive rate. Those were the things that he used. Now, this case is not an adverse possession case, and I suspect that if we had over 20 years, the defense to this claim would have been adverse possession. However, the record is clear that he didn't use it or those types of privileges in excess of 16 years. Had he also built a dock? Yes, Your Honor, he did. And, of course, that would have had to have been on the 15-foot strip. Yes, Your Honor, and he also mowed, I believe, and I think he seeded. There was testimony that he had seeded the 15 feet, and I believe he had planted flowers or something to that effect as well. Certainly elements that would be adverse to the owner. I think that that was also there. But the point here is in order for him to prove his affirmative defense, he had to come up with this agreement. Now, there is some testimony that he had some conversations with Mr. Patrick, who's not a party to this suit. So the elements of construction wherein the grantor and the deed and the language that he chose is going to be construed against him really isn't an issue here. You have two grantees from the same grantor of two different pieces of property. What we do know is Mr. Patrick, the first owner, desired to control the lake. He did. He had a 15-foot strip around the property. And with all due respect, this case is quite a bit different from Roqueta v. Hoyer. Most importantly in that case, I believe, is not just that there was an adjacent piece of property immediately next to the lake, but also the subdivision that occurred in Roqueta occurred after the bank acquired this piece of property. Here, Mr. O'Brien had the ability to see the plaque. And as a matter of fact, attached to the appellant's brief at A6 is a copy of that plaque, indicating that the lake is one piece of property subsequent and separate from that piece of property that Mr. O'Brien was going to purchase. Also absent in this case is any testimony that Mr. Patrick granted in any privilege specific. Mr. O'Brien didn't testify at all that Mr. Patrick told him he could swim, fish, build a dock, boat in the lake at all. Those were simply the things that he had done. He testified. Nobody objected to it, which is true, until such time that the lawsuit was filed. That's all true. There isn't any kind of claim here that because the appellees sat on their rights, somehow Mr. O'Brien should in equity claim some other rights that he didn't get. That's not before the court. The only thing before you is whether or not the affirmative defense that he established or raised, in fact, was supported by the evidence at trial. And it was not. I believe that the trial judge basically looked at the whole thing. The language, there is some language in my opinion that is poor. Whether or not it was ambiguous as to what privileges we were talking about would be dependent upon parole evidence that would have been introduced at trial. Unfortunately, in this case, the only evidence produced at trial is the restrictive evidence. There is no other evidence that there was anything else intended except the one right that stated in the restrictive evidence that were filed. And that's the only one. And, of course, you can search the public records. That's the only one that's in the public records with regard to this property. That's correct. And, again, there is no parole evidence that, as between Mr. O'Brien and Mr. Patrick, there was some conversation that it included other things either. All you have is the naked use by Mr. O'Brien and the one document that the judge had to look at to make a determination. Because Mr. O'Brien failed to establish his affirmative defense and prove or give some evidence of other privileges available, this court should not create him and simply say, well, we're going to look at this one word here, late privileges, because it's plural, it must mean something else. That would also, in my opinion, be no different than looking at whether or not there was the word any late privileges. Any late privileges available in a document is going to be defined by that document, not by the language that I choose to use to explain what those privileges may be. My point is this. The whole document is not very artfully drawn. So it was incumbent upon the defendant to come up with some evidence on a parole basis to explain what privileges were available to him. The only evidence that there was was the ability to discharge the subject into the lake. And it is because of that reason we would ask that this court affirm the trial court's rule. Thank you. Thank you, counsel. Counsel? If you accept Pelley's argument, in this case, in her reasoning, it almost amounts to a bait and switch on behalf of Mr. Patrick. Again, he had the sign in front of the subdivision advertising these as lakefront lots with restrictive covenants. Holds them out as such. And then when Mr. O'Brien approaches him to purchase one of these lots and says I'm not going to buy one of these lots unless I get late privileges, then he puts in this late privileges clause but drafts it so artfully that Mr. O'Brien gets nothing. And then as Mr. O'Brien uses the lake, as he thought he had the right to do, Mr. O'Brien sits back and never says anything. It's almost to believe that you'd have to believe that Mr. Patrick was somehow being fraudulent when he was conveying to Mr. O'Brien. I don't think that's the case. I think he intended, based on the language, to convey lake privileges. I think he was draining that to him. He knew that he wanted the lake privileges, and that's what he intended to convey with the language of the deed. It's inartfully drawn, but I think that is what his intent was. And even if there was no specific agreement or list saying here are the exact lake privileges that Mr. O'Brien is entitled to, Mr. Patrick certainly acquiesced in his using the lake in this manner. He allowed him, even assisted him in reshaping the bank of the land. He acquiesced in him fishing and boating, never objected whatsoever. I think if he was using this lake in a manner that Mr. Patrick did not intend him to use, he would have objected. He would have said, hey, this is not what we agreed to. I want to maintain control of this lake, and you don't have the right to do this. That never happened. I think that is for all evidence to show what the agreement was, to show that he did have those, his lake privileges. So the fact that there may not have been a specific written agreement that was entered into later saying here are your lake privileges, even if that did not occur, it almost did in that Mr. Patrick didn't acquiesce in Mr. O'Brien's use of the property in the manner that he did. As a result, we do ask you to reverse the trial court and find that Mr. O'Brien didn't have the privileges to use this lake. Thank you. Thank you. We appreciate the briefs and arguments of counsel. We'll take the case under advisory court. We'll be in a very short time.